HARDY, Judge.
This is an action by plaintiff praying for damages for personal injuries resulting from an accident sustained while she was a guest passenger in an automobile owned by her son and being driven at the time by her husband. The defendant is the automobile liability insurer of the son and it was stipulated during trial that the contract of insurance providing for a maximum liability of $25,000.00 for injuries to one person was in force and effect at the time of the accident and that the coverage included the driver as an insured. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $6,500.00. Counsel for plaintiff moved for an additur or, alternatively, a new trial. In a written opinion the trial judge assigned reasons for denying the relief sought by plaintiff’s motion but stated that he had been of the opinion after a pre-trial conference, and remained of the same opinion after hearing of the evidence, that the damages should have been assessed somewhere between the brackets of $10,000.00 and $15,-000.00. Judgment in accordance with the verdict having been duly signed, both plaintiff and defendant appealed therefrom.
Though other defenses were asserted in the pleadings, the only specification of error relied upon and contended for by counsel for defendant on appeal before this court is found in the assertion that plaintiff was guilty of negligence in that she was aware of her husband’s physical infirmity of deafness, which was a proximate cause of the accident, and, nonetheless, assumed the risk in riding as a passenger in the automobile which he was operating.
The record establishes the material facts related to the accident without substantial dispute. On September 16, 1960, Mr. W. P. Shehee, Sr., accompanied by his wife, the plaintiff herein, was driving a Buick automobile owned by his son, W. P. (Peyton) Shehee, Jr., west on Slattery Street in the City of Shreveport, en route to visit their son who was a patient in the Schumpert *796 Hospital. The collision occurred in the intersection of Slattery and Creswell Streets, the latter being a preferred thoroughfare. Mr. Shehee disregarded the stop sign located on Slattery, entered the intersection without stopping or slowing his speed and struck a car driven by Leonard Hunter, which was moving north on Creswell. At the time the Hunter car was being followed by a car driven by Mr. Sidney B. Pearce at a distance of some twenty feet, more or less. Both.Hunter and Pearce observed the approach of the Shehee car and concluded from its speed that it would not be able to stop before entering the intersection. Hunter applied his brakes and skidded for some fifteen or twenty feet but was unable to avoid the accident, his car being struck by the Shehee vehicle on the right front portion. As the result of the accident plaintiff sustained unusually serious, severe and painful injuries.
The burden of the argument advanced by counsel for defendant before this court is that Hunter sounded his horn, which Mr. Shehee did not and could not hear because of his deafness, and that this failure to hear and heed the warning signal given by Hunter was a proximate cause of the collision. Upon this conclusion counsel submits the proposition that Mr. Shehee’s physical infirmity of deafness was well known to his wife; that she assumed the risk attendant upon this condition, and was therefore guilty of negligence.
There is only one fault to be found with counsel’s argument and that is that the premise upon which it is based is not only lacking in support but is completely destroyed by the testimony of the witnesses on trial.
A concise and graphic narrative of the occurrence of the accident is found in the examination of Leonard Hunter, who was called as a witness for plaintiff, and we quote this pertinent testimony as follows :
“Q. Tell us what were you doing just before the accident.
“A. Well, I was on my way to work. I was going north on Creswell, and I was driving along around, I reckon, thirty-miles an hour. And I saw this car on Slattery approaching Creswell. So I cut down and got up off my gas, all the way up off my gas, knowing all the time that he was going to stop.
“Q. You thought he was going to stop ?
“A. Yes, sir, just knew definitely he was going to stop, because there was a stop sign right in front of him. So, as I slowed up at the crossing I said in my mind, I said, ‘Well, he is going to stop, I know. The driver will stop because a lot of folks drive pretty fast.’ And after I see he was going so fast that I knowed he couldn’t stop by the speed he had, well, I sounded my horn, ‘Boop! Boop!’ Just like that. By that time I seed he was going to come on out. I just got on my brake. I slid, I reckon, fifteen or twenty feet. So, as he come on out and hit me right at the front — hit me and bounced on over all the way across the street across the lawn and the house on the other side where he stopped.
“Q. How far away were you when you sounded the horn?
“A. I was right at the intersection when I sounded my horn.
“Q. If he had heard your horn could he have stopped?
“A. At the speed he had, he couldn’t have stopped.”
It is inescapably evident from the above testimony that at the time Hunter sounded his horn the Shehee automobile could not have stopped, and therefore, it inevitably follows that Mr. Shehee’s failure to hear had no causal connection whatsoever with the accident. The sole, exclusive, effective and proximate cause of the accident was the negligence of Mr. Shehee in proceeding into the intersection with a fa *797 vored street without bringing his car to a stop. In view of this factual circumstance there can be no issue as to contributory negligence through the doctrine of assumption of risk on the part of this plaintiff.
The above conclusion disposes of the basis of defendant’s appeal and we proceed to a consideration of plaintiff’s appeal which presents the question as to the insufficiency, vel non, of the amount awarded as damages.
At the time of the accident plaintiff was almost seventy-four years of age, but unusually healthy and active, which is attested by the fact that she operated and directed the management of her home and the keeping of a family household consisting of seven adult members. The injuries sustained by plaintiff were unusually varied, serious and painful, consisting of compound fractures of the nasal ■ bones; compound comminuted fractures of the nasal septum; intranasal lacerations of both nasal walls; multiple lacerations of the forehead and left cheek; a fairly large abrasion of the cornea of the left eye; the breaking of three teeth; an open fracture dislocation of the left ankle, including a compounded fracture thereof; com-minuted fractures of both the lateral and medial malleoli., As a result of the various fractures to the ankle bone ' all the bony structure thereof was interrupted, her foot was angulated to an extent of some sixty degrees and was being held only by the soft tissues of the flesh. Immediate surgical reductions of the fractures to the nasal and ankle bones were performed and the result of the operation upon the nose was satisfactory. However, despite the mortising of the ankle, the application and maintenance of a cast from toes to groin for approximately six weeks and the additional application and maintenance of a short leg cast for another six-week period, a non-union developed. Plaintiff’s attending orthopedic surgeon testified that “the foot was falling off, and our joint was becoming disorganized and losing its proper position.” Due to this condition an open reduction and a graft of the internal malleolus was performed and maintained by two intermedullary screws approximately three inches in length. At the time of the trial, almost fourteen months after the accident, plaintiff continued to complain of severe pain in the badly injured extremity, testified that changes in weather affected her condition, requiring her to use a walker at times, and, according to her testimony, walking continued to cause extreme pain. An additional complication was the development of traumatic arthritis, which, according to the testimony of the two experts in orthopedic surgery, tendered as witnesses for plaintiff, might necessitate a fusion of the ankle at some future time.
The above statement with respect to-plaintiff’s injuries is not all-inclusive but comprehends only the most serious of her multiple injuries. We can find no good reason for dwelling at any further length upon the numerous severe and painful injuries received by plaintiff. The record does-not contain the slightest controversion of the testimony on this point, and counsel for defendant primarily predicates his opposition to an increase in the amount awarded' upon the well established principle of our jurisprudence that the awards of damages-made by a trial judge or jury should not be disturbed except in instances of serious and manifest error. We are thoroughly cognizant of this principle and its application in. a long line of cases. As has been many times observed by all of our appellate tribunals, the award of damages for physical' injuries is, of necessity, somewhat arbitrary,, and this court, like all others, is hesitant to-disturb the awards made by a trial judge or jury except in instances of what we regard' as a serious lack of appreciation, understanding and consideration of the nature and effect of the injuries sustained.
Our study of the record before us on. this point has convinced us that the award made by the jury of $6,500.00 was so grossly inadequate that we have no hesitancy whatsoever in considering it to be evidence of manifest error. We are fortified in this conclusion by the observation of the learned *798 trial judge in his written opinion responsive to plaintiff’s application for an .additur or a new trial, as noted supra, that the assessed damages should have been fixed at $10,000.-00 to $15,000.00.
Perceiving no necessity for implementing our conclusion by further comment, it suffices to say that, in our opinion, a judgment for less than $15,000.00 would be a denial of fundamental justice.
Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that the judgment appealed from be amended by increasing the amount awarded therein in favor of plaintiff to the sum of Fifteen Thousand and No/100 ($15,000.00) Dollars, with interest at the legal rate from date of judicial demand until paid, and, as so amended, the judgment is affirmed at the cost of defendant-appellant.